742 F.2d 1109
 The PEOPLES GAS LIGHT AND COKE COMPANY and North Shore Gas
Company, Petitioners,
and
Iowa Power and Light Company and Northern Indiana Public
Service Company (NIPSCO), Intervening Petitioners,
v.
The FEDERAL ENERGY REGULATORY COMMISSION, Respondent,
and
Tennessee Gas Pipeline Company, a Division of Tenneco, Inc.,
Intervening Respondent.
 No. 83-2025.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 12, 1984.
Decided Sept. 5, 1984.
 
 Thomas M. Patrick, Chicago, Ill., for petitioners.
 Andrea Wolfman and A. Karen Hill, F.E.R.C., Washington, D.C., for respondent.
 Before PELL and COFFEY, Circuit Judges, and NICHOLS, Senior Circuit Judge.*
 NICHOLS, Senior Circuit Judge.
 
 
 1
 Petitioners seek review of an order of the Federal Energy Regulatory Commission (Commission) which (1) disallowed a composite emergency rate charged by Natural Gas Pipeline Company of America (Natural) to off-system customers, (2) selected a lower rate "prescribed" in Natural's filed tariff schedule, and (3) ordered Natural to refund to the off-system purchasers the excess charges. Petitioners allege that the Commission's decision choosing a specific rate to apply to the emergency sales in question was unreasoned, made in contradiction of the Commission's own rules and regulatory interpretations, and thus arbitrary or capricious. Because we find that the Commission failed to provide an adequate explanation for its rate-choosing approach, we vacate its decision and remand the case for further proceedings.
 
 I.--Background
 
 2
 On May 30, 1980, Natural filed an application for a general rate increase which, by Commission order of December 7, 1981, 17 F.E.R.C. p 61,205, was resolved for all but one issue. The reserved issue concerned the proper disposition of about $37 million in revenues Natural received from three off-system interstate pipelines (Tennessee Gas Pipeline Company, Texas Eastern Transmission Company, and Lone Star Gas Company) for emergency sales of natural gas which Natural made to them pursuant to the Commission's 60-day emergency sale regulations, 18 C.F.R. Sec. 157.45-.52 (issued pursuant to Section 7(c)(1)(B) of the Natural Gas Act, 15 U.S.C. Sec. 717f(c)(1)(B) (1982)). Natural's purchased gas costs for this gas amounted to about $1.82 per million British thermal units (MMBtu); it sold the gas at a rate of $3.00 per MMBtu.
 
 
 3
 Natural calculated its $3.00 rate on the basis of components from various rates it had on file with the Commission. Natural had not filed the $3.00 rate itself, however, when it made the emergency sales. The Commission held that because the $3.00 rate which Natural charged for this particular type of service did not appear on the face of the tariff, the rate was not "prescribed" in the tariff schedule as 18 C.F.R. Sec. 157.49(a) requires. Because no special circumstances were present, the Commission held that Natural could not justify under Commission regulations its use of the $3.00 rate in connection with the emergency sales. The petitioners do not contest the Commission's decision as to this point.
 
 
 4
 Once it was held that Natural's $3.00 rate was improper, however, a determination of the proper rate remained. During the period in which Natural made these emergency sales, it had several published volumetric rates (i.e., rates charged at stated prices per MMBtu of gas purchased) in effect for various sales services. The highest of these, the WS-1 (winter service) rate, was less than the $3.00 rate Natural charged. The presiding official in the initial hearing, who bore the responsibility to remedy Natural's overcharge and to establish the correct "prescribed" rate, reviewed all of Natural's filed rates and concluded that Natural had only one "prescribed" rate for emergencies, its E-1 rate. The E-1 rate, the lowest of Natural's published rates, is not by its terms available to off-system purchasers, however, because its availability is limited to "any utility, municipality or pipeline company which is a Buyer of natural gas under Rate Schedules DMQ-1 or G-1 of this Tariff." Despite this restriction, the presiding official decided that equity required him to do "that which should have been done, namely the modification of Natural's tariff in order to include the off-system emergency sales in its E-1 rate schedule."
 
 
 5
 The Commission affirmed the presiding official's application of the E-1 rate to Natural's off-system sales. It asserted here that there is no significant cost difference between emergency sales to on-system and off-system customers, but it did not explain why this is so. It ordered Natural to refund the revenue in excess of the E-1 rate, approximately $19 million, to the three purchasing off-system pipelines. Under Commission regulations, 18 C.F.R. Sec. 157.50(a), the net revenues derived from the emergency sales had been credited to, or set off against, the pipeline's unrecovered purchased gas cost, and had resulted in the flowing through of the benefit of the net revenues to the pipeline's on-system customers. A refund, therefore, will cause a corresponding increase in the costs to Natural's on-system customers. Natural itself neither benefits nor loses by the Commission's rate choice; therefore, its customers challenge, as the real parties in interest, the Commission's choice of the E-1 rate.
 
 II--Discussion
 
 6
 Our review of Commission decisions reached under the Natural Gas Act is limited to assuring that the decisions are reasoned, principled, and based upon substantial record evidence. Columbia Gas Transmission Corp. v. Federal Energy Regulatory Commission, 628 F.2d 578, 593 (D.C.Cir.1979). Thus, when we review a Commission order, our responsibility is to determine (1) whether the Commission abused or exceeded its authority; (2) whether each essential element of the Commission's order is supported by substantial evidence; and (3) whether the Commission has given reasoned consideration to each of the pertinent factors in balancing the needs of the industry with the relevant public interests. Permian Basin Area Rate Cases, 390 U.S. 747, 791-92, 88 S.Ct. 1344, 1372-1373, 20 L.Ed.2d 312 (1968). Giving the required deference to the Commission, we are nevertheless unable to find in the record any reasoned justification for requiring that Natural apply the E-1 rate instead of any other higher prescribed rate.
 
 
 7
 The Natural Gas Act does not mandate that the Commission use any specific formula in determining the proper rate to apply to emergency sales to off-system customers when no prescribed rate is applicable. The pertinent language concerning rates is brief and susceptible to varying interpretation: "Sales by interstate pipelines shall be made at rates prescribed in their tariffs * * *." 18 C.F.R. Sec. 157.49. The Commission interpreted its emergency sale regulation's "prescribed rate" requirement to preclude the construction of a composite rate based on cost-justified rate components. The Commission also held that a "pipeline has discretion within these regulations to determine which of its filed rates will be applied to the sale." 22 F.E.R.C. p 61,113 at 61,166. Thus, although a pipeline must make emergency sales at rates prescribed in a tariff, it may normally choose which of its filed rates it will apply.
 
 
 8
 Because Natural chose an improper rate for its off-system emergency sales, however, the responsibility for establishing a correct rate shifted to the Commission. From all of the available prescribed rates, the Commission chose the E-1 rate because, as far as we can tell, that was the only rate which applied to some type of emergency sale. Taking into account that a negotiated sale between two pipelines was executed at a rate higher than any rate prescribed in Natural's filed tariff schedule, and in view of the Commission's rule that the choice of appropriate rate is normally within the selling pipeline's discretion, we are unable to hold that the Commission has adequately supported its decision to choose the lowest of Natural's filed rates. Perhaps the Commission's choice of the E-1 rate is proper; we do not hold otherwise. For us to adequately review the Commission's decision, however, it is imperative that the Commission articulate the critical facts upon which it relied when it required Natural to use the E-1 rate. Columbia Gas Transmission Corp., 628 F.2d at 593.
 
 
 9
 The Commission seems to assume that any filed rate is just and reasonable, by definition, in any set of circumstances. Nevertheless, the very existence of several rates for several circumstances seems to imply that some of these rates will be unjust and unreasonable as applied in circumstances other than those for which the rates were devised. The dictum that for off-system emergencies a timely filed on-system rate will be valid as to those off-system emergencies without notice and hearing, seems to imply that Natural is being saddled with a rate that may be unjust and unreasonable, just as a penalty for not following the correct procedure. Authority for imposing such a penalty is not stated. On the other hand, the notion that any filed rate is just and reasonable in any circumstances is stated without the explanation and justification it sorely needs.
 
 
 10
 The Commission's analysis that the E-1 rate is compensatory, although necessary, is not conclusive that that is the proper rate to apply; other rates, in particular, may be equally compensatory. When several rates are economically justifiable, the Commission must specify not only why one rate is acceptable, but why it is the best rate and why other higher rates which Natural would have charged are unreasonable. Because the Commission has failed to provide any reasoned support for choosing the E-1 rate in this instance, we remand the case to the Commission for further proceedings.
 
 
 11
 VACATED AND REMANDED.
 
 
 
 *
 The Honorable Philip Nichols, Jr., of the United States Court of Appeals for the Federal Circuit, is sitting by designation